The next case on the calendar is United States v. Lambus. Good afternoon, your honors. May it please the court. My name is Marcia Henry and I represent the government in this case. The district court erred when it released defendant Stanley Fuller pending trial in this case. The defendant, who was convicted for witness tampering, was the leader and supplier of a heroin trafficking organization while he was on probation for that conviction. Yet the district court released the defendant to home confinement in the same residence where he lived while he led this drug trafficking organization, and to live with his fiancée, who is presently facing heroin trafficking charges. He was left to the organization. I think that's one of the things that Judge Weinstein took into account, that basically the organization had been dismantled, right? Many of the co-defendants in this case, it is true, have pled guilty and some of them have been sentenced. But two things to point out. One is that, again, they are free to be at liberty in the community. If the defendant is in his home, he has an opportunity for them to come to his residence and to continue the organization. Just because it had been previously dismantled doesn't mean that it couldn't be taken up again. In addition, as the defendant has noted in his own... So your point is that some of these, I don't know how many there were... Initially 12. 12, yeah. Some of them have been released now back into the community? Yes. Is that because they're cooperating or... Some of them, most of them have been sentenced. And completed their sentences? Yes, because they were sentenced either to time served or sentences that have since been served. Okay. May I, Your Honor? Go ahead. Thank you. We submit, however, that none of the conditions that the district court has proposed are sufficient to ensure the community's safety and that we would request that the order of release be reversed. Now, as a threshold matter in this case, the district court didn't make any findings with respect to the statutory presumption favoring detention in this case or any of the statutory factors at all. Nor did it address the magistrate court's determination regarding the defendant and him being detained. In this case, this court should apply a more flexible... An earlier decision, right? Correct, Your Honor. But the district court in this case did not make any findings with respect to dangerousness or any of the statutory factors. It merely released the defendant with the conditions. So we would ask the court to consider that. A burden on the government to establish that the defendant is a danger to the community? Yes, Your Honor. And, in fact, that leads to my next point. So there has to be a finding that he was a danger in order for him to be detained? Correct, Your Honor. And you're telling us there was no such finding? That the district court didn't make any findings. It simply listened to the parties and then issued a release order with specific conditions. And the government argued that he was a danger to the community? Yes, Your Honor. And the district court heard that and then nevertheless ruled that he should be released? But failed to make any findings or consider the statutory presumption in this case, which does apply because of the nature of the charges. The judge had just said, I don't think he's a danger to the community. Would that have been enough? It certainly would have been more than what he currently said, Your Honor. That's what he did say, in effect. Well, what he said was... I mean, that's what happened. I mean, one could... Well, what he said was he made a reference to the fact that if the defendant fled that the bail would be forfeited, which is true, but it doesn't speak to whether or not he's made a finding with respect to the defendant's actual dangerousness. Yeah. You're not talking... You're not... This case has never been about flight. It's always been about danger to the community. That's the point that the government is presenting today, yes. Right. And you also have made a point that not only would he get together with possibly his prior conspirators, but also because there might be a witness tampering situation here? Yes, Your Honor. This defendant has a history of witness tampering. In that case, in 2014, he pled guilty and was sentenced to... Regarding the witness tampering, in a case that had nothing to do with him, it was his cousin's criminal case, and that was a kidnapping and rape case. In that case, the defendant, A, had access to $20,000 in cash to pay the witness to recant her testimony. We have every concern that the defendant would... Where here, he's facing a 10-year mandatory minimum. One of the things that bothered the judge here was the fact that with the suppression motion having been granted, it wasn't clear when the case would ever go to trial, and a lot of time had gone by. He'd been incarcerated up to now, and when was he ever going to be tried? I mean, you know, that kind of thing. Well, Your Honor, he may have made comments to that, but a couple of things there. First, he wasn't clear that that was the case. Is there a trial date set? At present, no, in part because there are motions that are still pending before the district court with respect to co-defendant K. Mel Lambus and the GPS monitoring that he underwent as a condition of his state parole. There was a suppression motion granted, right? Correct, Your Honor. That was then... That is actually technically still before the district court. The suppression motion was granted... Just so I'm clear, the government appealed that, did it not? Your Honor, yes, however... And this court then, on consent, sent it back because of the co-defendant's additional arguments about suppression that still had to be considered or something like that? I can't say whether or not it was on consent, but it was remanded back to the district court. So the co-defendant's motions have to be resolved in the district court. Correct. And then after that, the case comes back here for the government's appeal to be adjudicated. Depending on the outcome, that is a possibility. You're thinking that there might be a reversal of the suppression motion? As of today, we're unclear as to what the district court's ruling is going to be. The current co-defendant's motion, the actual last round of briefing is due today, and the court has indicated that it intends to issue a decision shortly thereafter. But that's about other evidence. That would be about the wiretap. To this defendant, there's been suppression, right? Well, I think that what has happened is that because the district court has determined that that issue is related to the suppression issue that's already been decided, the case, again, has been remanded back to the district court to decide it in one fell swoop, and then depending on what happens as a result of the co-defendant's motion, the case would proceed from there. Well, if the co-defendant's motion is granted and even more stuff is suppressed than was suppressed in the first place that led to a government appeal, I guess we can expect a government appeal. As of today, Your Honor, I couldn't say that. And if the district court denies the co-defendant's motion, is there some reason why we should think that the government would not appeal the ruling that it's already appealed? Your Honor, again, as of today, we can't say what will happen. What we can say is that the district court has been very clear about the fact that this case is going to proceed to trial as expeditiously as possible, and as soon as all of these other outstanding motions and issues are resolved. I mean, expeditiously as possible, depending upon all these outstanding motions and so forth. I mean, it could be a year from now. Correct, Your Honor. I mean, these are motions that the defendant has fully joined in at various points in the litigation. I mean, this is a fairly complex case, and it has been designated as such from the beginning. As mentioned, it initially involved 12 defendants and a multi-month and significant amounts of heroin trafficked. And so we're talking about a case that has involved extensive litigation throughout. Can I ask? Fuller moved to suppress in April 2016, if I understand the record correctly. And the hearing is not held until December. Was there other motion practice? Yes, Your Honor. There was additional motion practice by both Mr. Lambus as well as Mr. Fuller, Mr. Lambus being the codefendant whose motion is currently before the district court. There were additional motions filed relating to an unsuccessful motion to compel the production of evidence. There was another motion. There have been several motions throughout this case, Your Honor, that have either been made by Defendant Fuller or joined, if made by Defendant Lambus, joined by Defendant Fuller. And do I understand your argument correctly that the house in which the defendant will be living on release, he'll be sharing an apartment with the fiance who has been implicated in heroin trafficking in another New York State case? Yes, Your Honor. In September of 2016, the defendant's fiance, the one that he's released to be lived to, and the person who's expected to keep him out of trouble, was arrested in her own heroin trafficking case involving half a kilogram of heroin. And so this is the person who the district court said would be responsible for making sure that the defendant didn't continue to engage in narcotics trafficking. And did the district court address that in his bail ruling? No, not at all. Can I just go back to what was suppressed? The initial, the fruits of the initial wiretap application are suppressed? Your Honor, there were five wiretaps that were approved in this case. The suppression order suppresses only the first wiretap. As of today, the remaining wiretaps remain as evidence that are admissible. The fruits of that remain as evidence against the defendant. Notably, the defendant wasn't actually intercepted on the first wiretap. He was only intercepted on the later wiretaps. And the later wiretaps are not fruits of the original wiretap? Not at present, Your Honor. You don't want to sever this defendant and just try him based on the existing wiretaps?  And there was a determination by the district court that an agent had committed perjury in connection with the first wiretap application? That was part of the written opinion, although at the close of the actual suppression hearing where this witness testified, the district court went out of its way to note the veracity of the witness, but the written opinion had a different conclusion. So once the judge actually looked at all the evidence, he reached a finding adverse to the credibility of the witness? You're saying I may sound kind of honest, but then eventually the judge finds he's not credible, right? Well, what the district court stated is that the initial wiretap application, if he found, yes, he made an adverse finding with respect to the initial wiretap application. He did not make an adverse finding with respect to that witness's testimony in front of him. Other aspects of the testimony may have been credible, but the point is that the reason the wiretap was suppressed is that the agent said under oath that he had made a survey of prior applications and there were no other applications involving this person when, in fact, there had been such applications and the agent who testified was involved in some of those situations and therefore knew that. That's correct, Your Honor. Okay. If there are no further questions, I'll reserve my time. Thank you. Thank you. May it please the court, good afternoon, Your Honors. Your questions, my name is James Kousouris. I'm sorry, I've heard everybody introduce themselves. I didn't introduce myself. My name is James Kousouris and I represent Stanley Fuller today. My questions track, my comments track many of your questions and if I may, I will address many of your questions one by one. Judge Walker, your question concerning what Judge Weinstein considered and didn't consider, Judge Lenningson, you had a question as well, Judge Lynch as well. Let's be clear. We're talking about a jurist who's been on the bench just about as long as I'm alive and I'm getting old and he heard everything. The government laid everything out. In our submissions, he had Magistrate Goh's entire colloquy, he had Magistrate Goh's decision and to be very clear, on page 396 of our appendix, Judge Weinstein says, it doesn't seem to me non-appearance is a big problem because if he doesn't appear, there's going to be a forfeiture of the bond. The big problem is that he will continue the alleged criminal conduct and threaten witnesses. Ms. Albert responded, other government counsel, those are the government's primary concerns, Your Honor. We also believe there is a risk of flight. This was at the end, after the government set forth all of their evidence concerning the alleged prior witness tampering and so on. There is no question that Judge Weinstein considered these issues, listened to everything, may not have said the magic words as Judge Walker gave an example of, but there's no question that he considered everything and that he considered the statutory factors here and made his decision. Now, I also want to address what the issue of danger was in this case. There was no danger of violence. There's no allegations of any use of weapons. Both magistrates go. I mean, if you continue selling drugs, that's a danger to the community. Absolutely. Or if you tamper with evidence, that's a danger to the community. You're absolutely right. And let's also remember that the bond we're talking about here is as restrictive as it gets. It's not a perfect bond. Anybody, obviously, if so inclined, is going to do the wrong thing. We're talking about a $750,000 bond secured by two properties with hundreds of thousands of dollars in equity, five suretors, most of whom make over $100,000 a year. But that's not forfeitable if he tampers with the witness, is it? Let's talk about that. And I think it's important as well that you take a look at what Magistrate Goh, this was litigated. This is what happened. His cousin was arrested and was in jail. The young lady in issue was as close to the entire family as family. She had been with him for a very long time. The tapes that were produced before Magistrate Goh clearly indicated that she reached out to Mr. Fuller. He didn't reach out to her. She reached out to him. I'm not saying that pleading guilty to a misdemeanor for tampering is something we're proud of or something you shouldn't consider. But it is not all that the government makes it. And when Magistrate Goh considered it, and by the way, Magistrate Goh was prevented with tape-recorded conversations. Her exact words were, I do not believe this is clear and convincing evidence that he's going to tamper with witnesses. So what I'm saying is that while we understand he's got a misdemeanor conviction, Judge, all of the defendants in this case have been prosecuted and sentenced. There is no allegation after 20 months in jail of listening to his MDC tapes that any efforts whatsoever have been made to either contact a witness or anything. We don't know that there are any witnesses in this case. This is a wiretap case. We've reviewed all of the discovery. And there is absolutely no evidence during these 20 months, where obviously he's saying a lot of things on the tapes as pointed out by the government, that there's any indication that any of the government's witnesses have been contacted, they know they're witnesses, or that there are any intimations on the tapes from MDC, or any evidence that he has made any attempts. This is not a case like Briggs, where the court affirmed because there was clear and compelling evidence that the defendant had in fact said he was either going to flee or kill himself if released, and the family had made some attempts to contact witnesses and gave hints that there was going to be reprisals. We understand the misdemeanor conviction, and that's why a very significant bond with home confinement, electronic monitoring, and every other form of supervision in this case has been imposed. Could you address the home confinement at the home of his fiancée, his home and his fiancée's home? It's a state case, and by the way, Judge Weinstein absolutely did address it. He said it's a state case. She has not been convicted. She's presumed innocent, and he absolutely considered it. It's in the record. If there needs to be an alternative, then we have two other people, and I offer this to the government that he could stay with. My understanding, Judge, based on my conversation with her attorney, is she was in a car and that the state attorney was talking about a misdemeanor. She's out on bail. She was released on her own recognizance, Judge. So I'm not saying, again, that's not something that's serious and to consider, but it's an ROR on what is ultimately, I'm told, going to be a misdemeanor because she was driving a vehicle. What was the arrest charge? I mean, what was the charge when she was arrested? In the state, it's not trafficking, as referred to by the government. It's a possession charge in the state court. But when you're talking about an A-1 and you're talking about a potential offer of a misdemeanor, you just have to take it within that context, and, again, something I'm sure you should consider. Judge Walker, you asked about delay. Let's be very clear here. What was going on with those motions was very simply this. We read the first wiretap. It says there have been no prior applications. We read the second application, and there are applications. A lot of these motions were to get the prior applications because this way, under 2518, we can really think about a necessity argument. This was an investigation that was of the same organization, same location, same people that was taken down, prosecuted. Then this investigation basically starts, and now you have an initial wiretap that says no prior applications were made. I needed to listen to those tapes in order to make my 2518 argument or at least amplify them. Lambus had a GPS on him for over two years, and he is rightfully saying, I have a motion as to whether or not this GPS was lawfully on my person. Our motions were filed on time, and we were not asking for continuances as in Briggs, as in Hill, as in other cases because it was so complex. We were doing our work, reviewed everything we had, realized we needed more, and this delay is because on December 29th, Judge Weinstein made it very clear, irrespective of comments at the end of that hearing, this was perjury. It was not inadvertent. This was an agent who had filed wiretaps before. In that same application, you had an assistant United States attorney saying that that assistant United States attorney was also swearing to the fact that there were no prior applications. And then, Judge Lynch, you asked about, well, what happens next and how long could this delay go? The government is appealing that decision after first saying to Judge Weinstein, in reference to your question, we don't need the first wiretap. We can proceed without it. When Judge Weinstein issued that decision and at the very end of that decision says the fruit of the poisonous tree issue has yet to be explored, we then submitted a letter. There's no question that the subsequent wiretaps relied so heavily on the initial wiretap. So that's the appeal, and Judge Weinstein is not reconsidering his decision on the wiretap. He has indicated he's now going to suppress the GPS, and the only question is what fruits from the GPS will also be suppressed. So for all of your questions, this appeal of the wiretap is in abeyance because the GPS issue needs to be decided. If Judge Weinstein suppresses on the GPS, we're going to consolidate those appeals and bring them back to you. The man's been in jail for 20 months, is likely to stay for 20 to 30 months more. And in reading all of your cases, I understand the Court has concerns, but they were addressed by Magistrate Goh. They were addressed by Judge Weinstein. And quite frankly, unless— He could wind up being in jail for a year or more, let's say, at a minimum, while all these issues are resolved and wind up with all the evidence suppressed, is what you're saying. Well, absolutely. And the point is that clearly the government's case is weaker today than it was when it started, and it could result in being substantially weaker later. So he'd be in jail for three to three-and-a-half years, and through no fault of his own. He didn't commit perjury in an application. I mean, this delay really does, at least for the most part, have to be attributable to the government. And again, we're not talking about five suretas signing a bond and him going home without supervision. It's about as strict as it gets. So I think that when you address the due process issue, when you address Ferrante and the simple question of if Judge Weinstein considered the factors, and I think Judge Walker is right, if you read the record, you look at it, and it's clear that he did, then it can only be reversed for clear error. And I respectfully submit that based on this record, that when you balance the concerns that you obviously have and should have against the bond and how strict it is, taking into consideration the fact that he's in jail for close to two years and there's going to be a considerable delay further, that there's really no reason that Judge Weinstein's order should be reversed. I ran out of time a long time ago, but if there are no other questions... Last case on the calendar. We'll hear from the government. Thank you very much, Your Honor. Thank you, Your Honors. I just want to make a couple of few points in response. As an initial matter, it's always been the government's position that even if you accept the district court's factual finding with respect to the agent's misstatements or perjury statements, it's the government's position that the court did not engage in the Frank's analysis that is required, and so we'll continue to press the position that the district court's decision is contrary to Second Circuit precedent. Litigating that question, are we? Here. It was mentioned. I just wanted to address that briefly. But besides that, really the essential facts regarding the defendant have not actually changed since he was initially detained in this case. He has been detained for approximately 20 or 21 months. Weinstein raised the issue of bail, didn't he? Correct. He was bonded. He invited applications for bail. That said, this court has never held that there's some sort of bright-line rule with respect to the amount of time that pretrial detention would be considered unreasonable. And in fact, the defendant has been in custody for less time than what the court has previously approved, for example, in United States v. Briggs, where the defendant there was in custody for 26 months. Again, there's no changing the fact that the defendant was convicted for witness tampering. And just as a practical matter, there was mention about the fact that there was no violence. The defendant has no violence in his background. And as was rightly pointed out, a finding of violence is not necessary to detain a defendant with respect to a dangerousness finding. What does support a dangerousness finding is the ---- Isn't our standard of review clear error? Well, in this case, because the district court did not make any findings with respect to the defendant's dangerousness or didn't address the statutory presumption. How can you say that? By reading the record, Your Honor. The judge has heard the government argue that the man is a danger to the community. And then he says, no, I think he should be released. There's not an implicit finding that rejects the government's position? Well, Your Honor, if you compare that, for example, with his co-defendant Lambus, who also made a bail application which was denied, the government went through all of the factors and the courts responded yes based on the 3142 factors and listed all of the factors and stated, I find that the defendant is a danger to the community. And yet, with respect to this defendant, he forgot all those factors and paid no attention to them? All I can say, Your Honor, is that the record doesn't reflect that the court, in the absence of the court's words ---- So you have no objection if we set it back on a Jacobson remand to ask Judge Weinstein to fill out, cross the Ts and dot the Is? I think on this record that this court can make the decision, actually. I think the record is clear and that the evidence is quite clear. So it doesn't make any difference. If Judge Weinstein had said, I explicitly find that he's no danger to the community, you say it's clear error and we should reverse that finding? The government's position, Your Honor, is that the district court didn't make those findings and, simultaneously, that this record is clear that that was an incorrect finding. So this court could actually correct that error right now. So you're not seeking a Jacobson remand to buttress the record? We think that the record is sufficient here. Thank you, Your Honors. Thank you both. We'll take it under advisement. That's the last case on the calendar this morning, so I'll ask the clerk to adjourn court.